**United States District Court**
**District of Massachusetts**

```
─────────────────────────────
                                )
JONATHAN B. KREISBERG ex rel.   )
NATIONAL LABOR RELATIONS BOARD, )
                                )
        Plaintiff,              )
                                )       Civil Action No.
        v.                      )       15-13395-NMG
                                )
EMERALD GREEN BUILDING          )
SERVICES, LLC,                  )
                                )
        Defendant.              )
                                )
─────────────────────────────
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves allegations that defendant used unfair labor practices in hiring new employees for contract cleaning services and in recognizing a particular union as the employees' exclusive collective bargaining representative, all in violation of the National Labor Relations Act ("the NLRA"), 29 U.S.C. § 151, et seq..

Pending before the Court is plaintiff's motion for a "temporary injunction," pursuant to § 10(j) of the NLRA, to remain in effect during the final disposition of administrative proceedings before the National Labor Relations Board ("the Board"). For the reasons that follow, plaintiff's motion for a temporary injunction under § 10(j) of the NLRA will be allowed.

I.    **Background**

A.    **Parties**

Jonathan Kreisberg is the Regional Director of Region 1 of the Board.  He has petitioned the Court for a temporary injunction for and on behalf of the Board.

Emerald Green Building Services, LLC ("Emerald Green") is a company that provides contract cleaning facility services at properties in Massachusetts and New Hampshire.  It has approximately 15 accounts at 25 buildings.  In January, 2015, Emerald Green replaced P.E.A.C.E. Plus Maintenance, Inc. ("Peace Plus") and entered into a contract to perform cleaning services at the Cross Point property in Lowell, Massachusetts and at the Nagog Park property in Acton, Massachusetts.

B.    **Defendant's alleged conduct**

Plaintiff claims that defendant violated multiple provisions of the NLRA by utilizing unfair labor practices when it 1) refused to hire employees to perform cleaning services at Cross Point and Nagog Park based on their membership or support of Service Employees International Union, Local 32BJ ("SEIU Local 32BJ") and 2) recognized and supported International Brotherhood of Teamsters, Local Union No. 25 ("Teamsters Local 25") rather than SEIU Local 32BJ as the exclusive collective bargaining representative for the employees at the two sites.

**C.    Procedural history**

In March, 2015, SEIU Local 32BJ filed an administrative complaint before the Board alleging that defendant violated §§ 8(a)(2), 8(a)(3), 8(a)(5) and 8(a)(1) of the NLRA.  The Administrative Law Judge ("ALJ") held a hearing on the complaint and issued a decision in September, 2015 finding that defendant engaged in unfair labor practices in violation of those provisions.  Defendant indicated an intent to file exceptions to the ALJ's decision.  The Board anticipated that its review of the ALJ's decision and defendant's exceptions would require "many more months of administrative litigation."

Plaintiff filed a complaint in this Court, for and on behalf of the Board, against defendant in September, 2015 alleging multiple violations of the NLRA.  Plaintiff moved for a temporary injunction under § 10(j) of the NLRA on the same day and the Court held a hearing on the motion shortly thereafter.

**II.  <u>Plaintiff's motion for a temporary injunction</u>**

**A.    Legal standard**

Section 10(j) of the NLRA provides:

> The Board shall have power, upon . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred . . . for appropriate temporary relief or restraining order . . . [T]he court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to

> grant to the Board such temporary relief or restraining
> order as it deems just and proper.

29 U.S.C. § 160(j).  In order for a district court to grant a

temporary injunction under § 10(j), the Board must establish

> reasonable cause to believe that the defendant has
> committed the unlawful labor practices alleged, and
> [that] injunctive relief is, in the language of the
> statute, "just and proper."

Pye ex rel. N.L.R.B. v. Sullivan Bros. Printers, 38 F.3d 58, 63

(1st Cir. 1994).  First, "reasonable cause" requires that "the

Board's position is fairly supported by the evidence." Id.

(internal quotation marks omitted).  Courts should not resolve

contested issues of fact and should defer to the

characterization by the Board of the facts as long as the

characterization is "within the range of rationality." Rivera-

Vega v. ConAgra, Inc., 70 F.3d 153, 158 (1st Cir. 1995).

Second, the "just and proper" standard requires the Board

to satisfy "the familiar, four-part test" for preliminary

injunctions and show:

> (1) [a] likelihood of success on the merits;
> (2) [t]he potential for irreparable injury in the
> absence of relief;
> (3) [t]hat such injury outweighs any harm preliminary
> relief would inflict on the defendant; and
> (4) [t]hat preliminary relief is in the public
> interest.

Sullivan Bros. Printers, 38 F.3d at 63.

### B.   Application

#### 1.   Reasonable cause

Plaintiff claims there is reasonable cause to believe that five particular instances of defendant's conduct violated various provisions of the NLRA.  The arguments in defendant's oral argument and written opposition address the "likelihood of success" requirement but not the "reasonable cause" requirement. Accordingly, the Court will treat plaintiff's arguments of "reasonable cause" as unopposed.

#### a.   Refusal to hire employees affiliated with SEIU Local 32BJ

Plaintiff contends that there is reasonable cause to believe that defendant violated §§ 8(a)(3) and 8(a)(1) when it refused to hire Peace Plus employees due to the collective bargaining relationship between Peace Plus and SEIU Local 32BJ.

Section 8(a)(3) of the NLRA prohibits an employer from engaging in

> discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . .

29 U.S.C. § 158(a)(3).  Conduct that violates § 8(a)(3) also derivatively violates § 8(a)(1) which prohibits an employer from interfering with, restraining or coercing employees in the exercise of their rights under the NLRA. Metro. Edison Co. v. N.L.R.B., 460 U.S. 693, 698 n.4 (1983).

Plaintiff has a fairly supported claim that defendant discriminatorily designed its hiring process so as to avoid hiring a majority of former Peace Plus employees and thus avoid its obligation to recognize SEIU Local 32BJ as the collective bargaining representative for the employees.  The Court reaches that conclusion based on evidence that 1) defendant admitted to the hiring scheme and thus to discriminatory motives and anti-union bias, 2) the rationales proffered by defendant of prioritizing past work experience in applicants and of hiring on a "first come, first served" basis do not accurately characterize its hiring process, 3) defendant imposed more onerous hiring criteria on former Peace Plus employees and 4) defendant was willing to assign former Peace Plus employees to other locations in order to avoid its successor obligation to bargain with SEIU Local 32BJ.

Accordingly, there is reasonable cause to believe that the hiring scheme used by defendant violated §§ 8(a)(3) and 8(a)(1) of the NLRA.

### b.   Refusal to recognize and bargain with SEIU Local 32BJ

Plaintiff asserts that it has reasonable cause to believe that defendant violated §§ 8(a)(5) and 8(a)(1) when it refused to recognize and bargain with SEIU Local 32BJ despite its successor obligation to do so.

Section 8(a)(5) prohibits an employer from refusing to bargain collectively with representatives of its employees. 29 U.S.C. § 158(a)(5). Plaintiff asserts that defendant was a successor employer to Peace Plus based on evidence showing that 1) defendant conducted essentially the same business as its predecessor Peace Plus did at the same locations and 2) former Peace Plus employees would have constituted a majority of defendant's work force at the two properties if defendant had not unlawfully discriminated against the former Peace Plus employees. Because Peace Plus had a preexisting collective bargaining relationship with SEIU Local 32BJ before defendant entered into the new contracts, defendant had a successor obligation to recognize, bargain with and treat SEIU Local 32BJ as the collective bargaining representative. There is ample evidence that defendant failed to do so.

Plaintiff has a fairly supported claim that defendant violated its successor obligation when it refused to bargain collectively with SEIU Local 32BJ. Defendant presents no evidence to the contrary on the issue of "reasonable cause" and instead presents "likelihood of success" arguments which are discounted for the reasons set forth below. Accordingly, the Court finds reasonable cause to believe that defendant refused to recognize and bargain with SEIU Local 32BJ in violation of § 8(a)(5). Because such a finding is dispositive on the issue,

the Court declines to address whether there is also reasonable cause to believe that the same conduct violated § 8(a)(1).

### c.   Unilateral imposition of employment conditions and terms

Plaintiff claims that defendant unilaterally imposed employment conditions and terms without consulting SEIU Local 32BJ in violation of §§ 8(a)(5) and 8(a)(1).

Plaintiff presents evidence that defendant admitted to establishing new wages and benefits by extending the scope of its collective bargaining agreement with Teamsters Local 25 to include the Cross Point and Nagog Park properties.  That evidence corroborates the earlier finding of the Court that there is reasonable cause to believe that defendant refused to recognize and bargain with SEIU Local 32BJ in violation of § 8(a)(5).

### d.   Recognition of Teamsters Local 25 as the collective bargaining representative

Plaintiff contends that defendant violated §§ 8(a)(2), 8(a)(3) and 8(a)(1) when it recognized Teamsters Local 25 as the exclusive collective bargaining representative and applied its collective bargaining agreement to the employees.  Plaintiff argues that there is reasonable cause to believe that defendant's actions violated its successor obligation to recognize SEIU Local 32BJ, or, alternatively, that its actions violated the successor obligation because they were taken even

though Teamsters Local 25 did not represent an uncoerced majority of employees.

> Section 8(a)(2) prohibits an employer from
>
> dominat[ing] or interfer[ing] with the formation or administration of any labor organization or contribut[ing] financial or other support to it . . .

29 U.S.C. § 158(a)(2).  Plaintiff refers the Court to evidence it presented with respect to its contention that defendant recognized and assisted Teamsters Local 25 in violation of its successor obligation to bargain with SEIU Local 32BJ.

Accordingly, the Court finds reasonable cause to believe that defendant's actions in recognizing and bargaining with Teamsters Local 25 as the collective bargaining representative violated § 8(a)(2) because they interfered with the formation or administration of SEIU Local 32BJ.  The Court declines to address whether that conduct also violates the same or other NLRA provisions under different theories.

### e.   Unlawful assistance to Teamsters Local 25

Finally, plaintiff asserts that there is reasonable cause to believe that defendant rendered unlawful assistance to Teamsters Local 25 in violation of §§ 8(a)(2), 8(a)(3) and 8(a)(1).  Plaintiff offers evidence that 1) defendant admitted to including Teamsters Local 25 membership forms and dues check-off forms in the applications it provided to former Peace Plus employees, 2) defendant admitted to introducing the Teamsters

Local 25 representative at the company orientation for new Cross
Point employees, 3) representatives of defendant remained
present at the Cross Point orientation while a representative of
Teamsters Local 25 distributed membership forms to employees and
4) defendant admitted to informing former Peace Plus employees
that it considered Teamsters Local 25 to be its union.

Accordingly, the Court finds reasonable cause to believe
that defendant provided unlawful support to Teamsters Local 25
in violation of § 8(a)(2).  The Court declines to address
whether the same conduct also violates other NLRA provisions.

### 2.   Just and proper

#### a. Likelihood of success

Plaintiff avers that it has a likelihood of success on its
claims based on evidence in the administrative record and on
arguments that it set forth with respect to the presence of
"reasonable cause."  Defendant responds that 1) the subject
legal standard is more stringent and not met by plaintiff and 2)
defendant is not a successor employee to Peace Plus and is thus
not bound by a successor obligation to recognize and bargain
with SEIU Local 32BJ as the collective bargaining
representative.

#### i.  Legal standard

As an initial matter, defendant asserts that plaintiff must
show a "strong likelihood of success" rather than a "likelihood

of success" because the temporary injunction which plaintiff seeks in this Court is, in effect, identical to the permanent injunction that plaintiff will seek in the event it later prevails on the merits. Sullivan Bros. Printers, 38 F.3d at 63 ("When, as in this case, the interim relief sought by the Board is essentially the final relief sought, the likelihood of success should be strong.") (internal quotation marks omitted).

Defendant misinterprets the injunctive relief that plaintiff seeks.  Plaintiff seeks back pay and monetary relief in its request to the Board for a permanent injunction but does not seek such relief in its request to this Court for a temporary injunction.  The more stringent legal standard does not apply.

The Court is mindful that any injunctive relief that it imposes under § 10(j) must be temporary in the sense that

> a section 10(j) request [is] a promise of a speedy
> disposition, with the risk of dissolution, or
> modification, by the court, on motion of the employer,
> if the promise is not kept.

Asseo v. Pan American Grain Co., Inc., 805 F.2d 23, 29 (1st Cir. 1986).  The Court notes that defendant may condition the continued efficacy of any action that it takes pursuant to the injunction upon the final disposition of the administrative proceedings.  Because the injunctive relief that plaintiff seeks in this Court is indeed temporary and different from the

permanent injunctive relief that it seeks before the Board,
plaintiff need only demonstrate a "likelihood of success," not a
"strong likelihood of success," in order to satisfy the first
element of the "just and proper" requirement.

### ii. Successor status

A successor employer is an employer that maintains
generally the same business as the predecessor employer. Fall
River Dyeing & Finishing Corp. v. N.L.R.B., 482 U.S. 27, 41, 43
(1987).  In applying that requirement, courts assess whether
there is "substantial continuity" between the two employers by
considering factors such as whether 1) the business of both
employers is essentially the same, 2) employees of the new
company perform the same jobs in the same working conditions
under the same supervisors, 3) the new entity has the same
production process, produces the same products and has
essentially the same body of customers, 4) the new employer
acquired substantial assets from the predecessor, 5) the new
entity continued the business operations of the predecessor
without interruption and substantial change and 6) the retained
employees would view their job situations as essentially
unaltered. Id. at 43 (describing the factors of the approach set
forth in N.L.R.B. v. Burns Int'l Sec. Servs., Inc., 406 U.S. 272
(1972)).

Plaintiff proclaims that 1) employees of Peace Plus and employees of defendant performed the same janitorial and cleaning services in the same buildings, 2) defendant made no changes to the cleaning services provided to the buildings at Cross Point and Nagog Park and 3) defendant provided the full range of cleaning services immediately upon taking over the contracts such that there was no delay or gap in the cleaning services.

Defendant responds that 1) its cleaning operations were "totally different" from those of Peace Plus because defendant hired more cleaning employees to perform the work at the two properties, 2) it supplied its own cleaning equipment and employee uniforms and did not purchase assets or equipment from Peace Plus, 3) it provided new supervisors for the employees rather than retaining the Peace Plus supervisors, 4) it paid different wages and offered different benefits to the employees under its collective bargaining agreement with Teamsters Local 25, 5) neither Peace Plus nor defendant considered the Cross Point and Nagog Park properties to be bargaining units separate from the company-wide bargaining unit of defendant and 6) Peace Plus and defendant were industry competitors that did not share any customers.

The Court concludes that 1) a total numerical increase of one or two employees does not, by itself, render the cleaning

-13-

operations of defendant "totally different," 2) defendant provided different wages and benefits only as a result of its unlawful refusal to recognize and bargain with SEIU Local 32BJ, 3) the nature of the bargaining unit as company-wide or property-specific does not turn on the opinion of the employer and 4) it is unclear how the status of defendant as a cleaning services competitor of Peace Plus is relevant to the continuity analysis.

The Court also notes that defendant's reliance on Lincoln Private Police, Inc., 189 N.L.R.B. 717 (1971) is misplaced because that decision 1) predated the seminal decision of the United States Supreme Court in Fall River, 2) was recently denounced by the Board as a misleading outlier that is "out of line with longstanding Board successorship doctrines" and 3) has not been cited in any published Board decision since 1991. A.J. Myers & Sons, Inc., 362 N.L.R.B. No. 51, at *8 (2015).

Accordingly, the Court finds that plaintiff has shown a likelihood of success in demonstrating sufficient continuity between the cleaning operations of Peace Plus and defendant such that defendant qualifies as a successor employer to Peace Plus.

### iii. Successor obligation

The obligation of a successor employer under § 8(a)(5) to bargain with the union that represented its predecessor's employees arises only if defendant hired a majority of those

employees as of the date that the new operational unit became a "substantial and representative complement." Fall River, 482 U.S. at 41, 46-47.  To assess whether and when that date occurred, courts weigh factors such as: 1) the degree to which the new employer substantially filled the job classifications designated for the operation, 2) the extent to which the operation was in substantially normal production, 3) the expected duration of the transition period before the new employer would reach substantially normal levels of production, 4) the size of the complement during the transition period and 5) the relative certainty of the expected expansion of the new employer. Id. at 48-49.

Plaintiff urges the Court to simplify that multifactor analysis into a straightforward inquiry as to when the new employer hired approximately 30% of the eventual employee complement in 50% of the job classifications. See Shares, Inc., 343 N.L.R.B. 455, 455 n.2 (2004) ("In general, the Board finds an existing complement to be substantial and representative when approximately 30 percent of the eventual employee complement is employed in 50 percent of the job classifications.").

Plaintiff presents evidence that 1) defendant immediately provided the full range of cleaning services at both properties without undergoing a transition period or a gradual build up in operations, 2) defendant initially hired six former Peace Plus

employees and a total of 17 employees to work at Cross Point, 3) defendant hired five former Peace Plus employees and a total of 10 to 11 employees to work at Nagog Park and 4) the cleaning contracts involved only janitorial employees such that defendant had only one job classification to fill.  Plaintiff relies on that evidence to conclude that, because defendant immediately hired at least 30% of the employees in 100% of the job classifications at Cross Point and Nagog Park, the "substantial and representative complement" dates are the dates that defendant took over the cleaning contract at each property.

In response, defendant highlights the undisputed fact that defendant ultimately hired ten former Peace Plus employees to work at Cross Point.  That fact is, however, irrelevant because it addresses an event that occurred after the "substantial and representative complement" arose.  Defendant presents no other specific objections to plaintiff's argument.

Accordingly, the Court agrees with plaintiff and assesses whether defendant hired a majority of former Peace Plus employees at the time that defendant took over the contracts.

The undisputed evidence shows that with respect to the Cross Point property defendant initially hired six former Peace Plus employees and a total of 17 employees, and, as to the Nagog Park property, defendant hired five former Peace Plus employees and a total of 10 to 11 employees.  At first glance, the hiring

-16-

data suggest that defendant did not hire a majority of former Peace Plus employees at either property which, in turn, would lead to the conclusion that no successor obligation ever arose.

Plaintiff convincingly contends, however, that the Court should nevertheless infer majority hiring because defendant intentionally discriminated against former Peace Plus employees in order to avoid the 51% threshold that would trigger its successor obligation.  The Board has held that

> any uncertainty as to what Respondent would have done absent its unlawful purpose must be resolved against Respondent, since it cannot be permitted to benefit from its unlawful conduct.

Love's Barbeque Rest. No. 62, 245 N.L.R.B. 78, 82 (1979). See also Pressroom Cleaners, 361 N.L.R.B. No. 57, at *1 (2014) (finding that a successor that unlawfully refused to hire the employees of its predecessor must comply with the substantive terms of the collective bargaining agreement of its predecessor). The Court agrees that it should infer that defendant would have hired at least a majority of former Peace Plus employees at each property if it had not unlawfully discriminated against them.

Defendant's attempts to rebut that inference of majority hiring are without merit.  First, defendant argues that it

> hired 10 out of 17 [Peace Plus] applicants at Cross Point and 5 out of 9 [Peace Plus] applicants at Nagog Park. The mathematics clearly prove[] that in each location [it] hired more than 50% of the existing workforce.

The Court is puzzled by that argument because 1) it improperly refers to the percentage of the workforce of its predecessor instead of the percentage of its own workforce and 2) it appears to strengthen rather than rebut the inference of majority hiring.

Moreover, defendant contends that the proper bargaining unit for calculating the percentage of former Peace Plus employees that it hired at Cross Point and Nagog Park is state-wide rather than facility-specific.  Defendant suggests that Peace Plus had an "area-wide" bargaining unit that geographically encompassed two states and that it did not have a successor obligation because it did not employ 50% of all the Peace Plus employees represented by SEIU Local 32BJ.  Defendant claims that defining its bargaining unit as area-wide is warranted because that was the approach taken by the Board in the Lincoln decision when it faced similar facts. The Court declines to adopt that approach, however, because 1) the Board recently rejected the reasoning in the Lincoln decision as outdated and misleading, as discussed above, and 2) that case is distinguishable from the instant case in that the Lincoln parties expressly stipulated that the bargaining unit would be geographically defined by a particular metropolitan area. Lincoln, 189 N.L.R.B. at 717-18.  Furthermore, as plaintiff

points out, defendant overlooks the "partial successorship" principle that:

> [S]uccessorship obligations are not defeated by the mere fact that only a portion of a former union-represented operation is subject to the sale or transfer to a new owner, so long as the employees in the conveyed portion constitute a separate appropriate unit, and they comprise a majority of the unit under the new operation.

Hydrolines, Inc., 305 N.L.R.B. 416, 423 (1991). Defendant has not shown that the employees at the Cross Point and Nagog Park facilities lost their separate identities by merging or integrating into the larger bargaining unit of defendant. The presumption of a facility-wide bargaining unit applies. See North Hills Office Servs., 342 N.L.R.B. 437, 444 (2004) ("[A] single-facility unit is presumptively appropriate for collective bargaining, unless it has been so effectively merged into a more comprehensive unit, or is so functionally integrated, that it has lost its separate identity."). The Court thus declines to adopt defendant's definition of its bargaining unit as a state-wide rather than a facility-specific unit.

The Court also declines to apply the "accretion" doctrine as a justification for defining defendant's bargaining unit as company-wide rather than facility-specific. The accretion doctrine applies only when

> the employees sought to be added to an existing bargaining unit have little to no separate identity and share an overwhelming community of interest with the preexisting unit to which they are accreted.

-19-

E.I. Du Pont de Nemours, Inc., 341 N.L.R.B. 607, 608 (2004).
Defendant has not made that showing.  After considering
1) evidence that there was only a slight interchange among
employees at different buildings, 2) payroll records which
indicate that no employee worked at both Cross Point and Nagog
Park, 3) employee testimony confirming that employees worked at
only one location and 4) evidence that the work locations were
without common supervision, the Court agrees with plaintiff that
the accretion doctrine does not apply.

In sum, defendant has not rebutted the inference of
majority hiring created by its unlawful discrimination and must
comply with its successor obligation.

Accordingly, plaintiff has shown that it will likely
prevail on its claims of successor status and successor
obligation.  For that reason and for the reasons set forth in
the "reasonable cause" discussion, the Court finds that
plaintiff will likely prevail on its claims that defendant
unlawfully 1) refused to hire former Peace Plus employees,
2) refused to recognize and bargain with SEIU Local 32BJ,
3) imposed employment conditions and terms without consulting
SEIU Local 32BJ, 4) recognized Teamsters Local 25 as the
collective bargaining representative and 5) assisted Teamsters
Local 25.

### b. Irreparable harm

Plaintiff alleges the following forms of irreparable harm in the absence of a temporary injunction: 1) a chilling effect on employee willingness to participate in protected union activity, 2) employee fear of employer retaliation based on the actions of defendant in discharging or refusing to hire union supporters, 3) the reluctance of discriminated-against employees to accept offers of reinstatement when a significant period of time has passed between the unlawful labor practice and the offer and 4) a conferral of "unwarranted prestige" on Teamsters Local 25 which defendant can use to further erode employee support for SEIU Local 32BJ and solidify employee support for Teamsters Local 25.  In support of its final argument, plaintiff cites the decision in Asseo v. Centro Medico del Turabo, 900 F.2d 445 (1st Cir. 1990), in which the First Circuit Court of Appeals ("the First Circuit") found that an employer that continued to withhold recognition from a union presented a

> very real danger [of eroding employee support for that union] to such an extent that the [u]nion could no longer represent those employees.

Id. at 454.

Plaintiff also claims that a final order by the Board in the administrative proceedings would be meaningless unless the Court issues a temporary injunction 1) to restore union supporters to the bargaining unit by ordering defendant to hire

former Peace Plus employees and 2) to rescind the unilaterally imposed employment conditions and terms so that defendant cannot use the possibility of rescission as leverage in future collective bargaining negotiations with SEIU Local 32BJ.

Defendant, in turn, submits that a temporary injunction would effectively prevent it from exercising its right of appeal and would unleash the following parade of horribles upon it: 1) forced hiring of former Peace Plus employees who defendant chose not to hire in March, 2015, 2) forced termination of current employees in order to accommodate the newly hired workers, 3) payment of full back pay, including wages and fringe benefits with daily compounded interest, to the former Peace Plus employees who were not hired in March, 2015, 4) forced refunds of the Teamsters dues paid by the former Peace Plus employees who were hired in March, 2015, and 5) a duty to recognize and negotiate with SEIU Local 32BJ despite the standing, company-wide collective bargaining agreement between defendant and Teamsters Local 25.  Defendant insists that, even if it were to prevail in the administrative proceedings before the Board and/or the First Circuit, it would not be able to recover the payments made to the former Peace Plus employees and would be locked into a collective bargaining agreement with SEIU Local 32BJ "far beyond the appeal period."

Defendant has exaggerated the extent of the harm that it would face under a temporary injunction.  A temporary injunction would not affect the ability of defendant to exercise its right to appeal.  Plaintiff does not seek back pay or monetary relief in its request for a temporary injunction in this Court.  The harm that defendant faces as a result of hiring the discriminated-against employees, discharging existing employees if necessary and bargaining in good faith with SEIU Local 32BJ is not irreparable because such burdens "will only last until the Board's final determination." Pan American, 805 F.2d at 28. Defendant can condition the reinstatement of the former Peace Plus employees and the continued efficacy of any collective bargaining agreement that it reaches with SEIU Local 32BJ upon final disposition of the administrative proceedings. See id.  If defendant ultimately prevails on the administrative claim, it can discharge the newly instated employees and its bargaining obligations to SEIU Local 32BJ.

Accordingly, the Court finds that the irreparable harm factor weighs in plaintiff's favor.

### c. Balance of hardships

Plaintiff asserts that defendant would suffer little to no hardship under a temporary injunction because 1) the former Peace Plus employees are experienced in cleaning services and are qualified for the positions at Cross Point and Nagog Park

-23-

such that mandatory instatement would not cause defendant harm,
2) the rights of discriminated-against workers to those
positions are protected by the NLRA and thus outweigh the rights
of any workers who must be discharged or reassigned in order to
make room for the newly hired workers and 3) directing defendant
to bargain in good faith with SEIU Local 32BJ would restore the
lawful status quo and promote stable labor relations between
defendant and the employees.

Defendant contends that its burdens under a temporary
injunction would "far outweigh[]" any injuries to plaintiff or
the former Peace Plus employees in the absence of a temporary
injunction.  Defendant stresses that, if plaintiff were to
prevail on the administrative claim, defendant could provide the
discriminated-against employees with back pay and could start
negotiating with SEIU Local 32BJ at that later date.  Because
the interest on the back pay payments is compounded daily,
defendant notes, the former Peace Plus employees would not be
prejudiced by the delay.

The Court disagrees with defendant.  Any delay in
reinstatement or reaching a new collective bargaining agreement
would amplify the chilling effect on protected union activity
that resulted from defendant's unlawful conduct.  Temporary
injunctive relief under § 10(j)

> is designed to prevent employers from using unfair labor
> practices in the short run to permanently destroy
> employee interest in collective bargaining.

Pye ex rel. N.L.R.B. v. Excel Case Ready, 238 F.3d 69, 75 (1st
Cir. 2011).  The perceived harm that defendant created through
its actions will cause greater injury than the alleged
countervailing harm that defendant might suffer under a
temporary injunction.

Accordingly, the balance of hardships tips in plaintiff's
favor.

### d. Public interest

Plaintiff contends that a temporary injunction is in the
public interest because it furthers the purposes of the NLRA in
strengthening the bargaining process, stabilizing labor
relations and ensuring that employees receive the benefits of
legitimate union representation.  In response, defendant
suggests that a temporary injunction would not further the
public interest because it would force defendant to violate its
existing collective bargaining agreement with Teamsters Local 25
and terminate current employees in order to make room for the
new employees.

Defendant, however, misunderstands the nature of the public
interest factor.  The purpose of that factor is to incorporate
the overarching objectives of labor law, not the specific goals
of a particular party, into the analysis of whether a temporary

-25-

injunction would be "just and proper."  See Centro Medico, 900
F.2d at 455 ("If the goal of the labor laws and regulations is
to strengthen the bargaining process, then ordering bargaining
to commence cannot be contrary to the public interest.")
(citations omitted).  As a result, the Court finds that the
public interest factor weighs in plaintiff's favor.

Accordingly, the Court finds that plaintiff has
demonstrated "reasonable cause to believe" that defendant
violated the NLRA and that temporary injunctive relief would be
"just and proper."  The Court will thus allow plaintiff's motion
for temporary relief under § 10(j) of the NLRA.


**ORDER**

For the foregoing reasons, plaintiff's motion for temporary
injunctive relief (Docket No. 7) is **ALLOWED**.


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 23, 2015